## Peoples State Bank & Trust Co. et al. v. Swope's Ex'r et al.

May 4, 1943.

As Modified on Denial of Rehearing

June 25, 1943.

M. C. Redwine and Rodney Haggard for appellants.

S. T. Davis for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

The decision turns upon the construction of the will of John W. Swope who departed this life in February; 1938, a resident of Clark county. The will reads:

"My last will this Mar 20-1934 I will that is give my beloved wife Talitha M. Swope my house and lot on S. M. St. and my Garage lot on S. H. St. during her natural life instead of note she holds against me also to give her the rite to sell either piece or both pieces for her matanance and well being for her support if she needs to. I also will that my exetor sell after my death all and ever thing that I may have at my death and pay all my debts, and divide the the proceeds that I may have left between my six children equally. 20 years ago I made practaly this

same will with this provision for my wife. I did not know then I would own property in Winchester that she had rather have than part of my home. I also will that there need be no appraisement of my estate.

"I also will that my son Jas. c. Swope wind up my estate.

"John W. Swope."

The initials S. M. and S. H. refer to South Main and South Highland Streets in Winchester. The house on South Main Street and the garage on South Highland Street were occupied and enjoyed by the widow until her death on November 27, 1940, neither having been sold in her lifetime. John W. Swope was survived by six children in addition to the widow; all of the children survived their mother and were living at the time of the institution of this action. One of the children, John C. Swope, was indebted to appellant Peoples State Bank and Trust Company. The bank filed suit to recover on the debt and caused an attachment to issue on December 2, 1940. On December 7, 1940, the attachment was levied on his undivided one-sixth interest in both pieces of real estate and lis pendens notice of the suit and attachment was filed in the county clerk's office on the same day. On the 23rd day of April, 1941, judgment was entered sustaining the attachment and permitting the bank to recover judgment in the amount of $2,057.47 with interest from March 22, 1940, subject to certain credits aggregating $383. On June 6, 1941, execution was issued and placed in the hands of the sheriff who made levy on both pieces of property and sold them under the execution on June 23, 1941. The bank became the purchaser for $1,100. Deed was executed by the sheriff to the bank on June 24, 1941, acknowledged June 27, 1941, delivered, and lodged for record August 6 of the same year. During the pendency of that action and after lis pendens notice was filed, the Swope heirs contracted to sell the South Main Street property to one of their number, viz., Thomas M. Swope, for the sum of $5,000. That transaction was never consummated, whereupon, the heirs sold the property to Andrew Dykes for $4,800. The contract of sale was executed September 3, 1941. Previous to the execution of the contract with Dykes, Thomas M. Swope and his wife instituted this action claiming title and right of possession to the property on South Main Street by reason of a deed executed pursuant to the contract of

sale entered into in March, 1941. After the filing of the petition, Mr. Dykes entered the case as a party defendant and set up his claim to the property, whereupon Thomas M. Swope and his wife withdrew their claim in favor of Dykes.

Dykes contends that by the terms of John W. Swope's will, the real estate was converted into personalty and that the only claim appellant has is a lien upon the proceeds of sale to which John W. Swope would have been entitled had the attachment and execution not been levied. The bank claims that, under the terms of the will, no conversion of the South Main Street property or the South Highland Street property was had, and, since the real estate was not converted into personalty, it became the outright owner of an undivided one-sixth interest in both pieces of real estate by reason of the execution and delivery of the deed made by the sheriff pursuant to the execution sale. If appellee's contention should be upheld, appellant can look only to one-sixth of the purchase price under the contract with Dykes which has been impounded awaiting the outcome of this action. If appellant's contention should be upheld it will be free to negotiate for the sale of the one-sixth interest upon such terms as it sees fit. The title to the South Highland Street property is not involved in this litigation.

By the will the widow was given the right not only to use and occupy the property for her lifetime but was granted the power to sell such part thereof as might have been necessary for her support. It is true that in the next sentence the testator directs his executor to sell "all and ever thing that I may have at my death," and to divide the proceeds among the testator's six children. If by the expression "all and ever thing that I may have at my death," the testator meant to include the South Main Street property, such provision would be inconsistent with the right of the widow to use, occupy, and dispose of the property in her lifetime, but, if he meant all property, other than the real estate described thereinbefore, such intention would not have been inconsistent with the provision that the widow should occupy and use the property, and, if necessary, sell it for her maintenance. It is perfectly plain that it was the intention of the testator to devise the real estate in question to his widow for life. It is likewise obvious that the testator intended to grant her the power to sell the property in her lifetime. That

being true, the testator could not have intended to extend to the executor the right to create a situation which would render the widow powerless to carry out his directions in the respects mentioned. When it is certain, beyond reasonable doubt, that particular words were, omitted in the drafting of a will, the court will supply the words necessary to give the will the meaning intended by the testator and the will will be read and construed as if those words had been written in the body of the instrument. Struss v. Fidelity & Columbia Trust Co., 182 Ky. 106, 206 S. W. 177. We are of the opinion, therefore, in order to arrive at the true intention of the testator, the word "other" should be read into the sentence of the will between the words "ever" and "thing" so that the sentence will read "all and ever(y) other thing." Under that construction, the executor did not have the power to sell the South Main Street property; and, upon the death of the widow, the title passed directly to the heirs.

John C. Swope's interest in the property was subject to attachment and execution; that the property had been attached and sold under execution were facts of which Mr. Dykes had constructive notice at the time he entered into the contract to purchase the property from the executor and the heirs. That being true, the heirs were privileged to sell only an undivided five-sixths interest in the property. The other undivided one-sixth interest was lawfully acquired by the appellant bank upon delivery of the deed of June 7, 1941.

Since the chancellor's decree does not conform to the views herein expressed, it is reversed with directions that it be set aside and another be entered, in conformity with this opinion.